STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY v
C A MUER CORPORATION

Docket No. 85099. Submitted April 15, 1986, at Detroit. Decided
September 8, 1986.

Gregory Schultz, an employee of defendant C. A. Muer Corpora-
tion, was injured in an automobile accident. Schultz was in-
sured by a no-fault policy issued by plaintiff, State Farm
Mutual Automobile Insurance Company. He also was a partici-
pant in an uninsured employer-funded medical benefit plan,
defendant C. A. Muer Employees' Medical Benefits Plan (Class
7), which was supervised by defendant Northern Group Ser-
vices, Inc. The Muer Plan contained a coordination of benefits
clause providing coordination of benefits with any other health
plan, including no-fault insurance, and giving priority to the
plans under which the insured had been covered longer. Plain-
tiff brought a declaratory judgment action in the Wayne Circuit
Court to determine the liability of the parties. Defendants
denied liability, relying on the Muer Plan's coordination of
benefits clause, and moved for summary disposition on four
grounds: (1) plaintiff's coverage of Schultz pre-dated defendants'
coverage making plaintiff liable for all of Schultz's benefits as a
matter of law; (2) plaintiff's claims were preempted by the
Employee Retirement Income Security Act; (3) plaintiff had
failed to comply with the Muer Plan's claim procedures and
had thus failed to exhaust its administrative remedies prior to
commencing suit; and (4) C. A. Muer Corporation was not a
proper party defendant. Plaintiff also moved for summary
disposition and, following a hearing on both motions, the trial
court, John H. Hausner, J., entered an order in favor of the
defendants, concluding that the terms of the Muer Plan con-
trolled and, since the no-fault policy had been issued to Schultz
at least ten months prior to Schultz's enrollment in Muer's

REFERENCES

Am Jur 2d, Automobile Insurance §§ 340 et seq.

Am Jur 2d, Insurance §§ 1842 et seq.

Am Jur 2d New Topic Service, Pension Reform Act § 7.

See the annotations in the Index to Annotations under Insurance
and Insurance Companies; No-fault Insurance.

benefit plan, plaintiff was liable for primary coverage of Schultz's medical expenses. Plaintiff appealed.

The Court of Appeals *held:*

The no-fault act does not apply. The Muer Plan is governed by ERISA since it is an uninsured employer-funded employee benefit plan and is not exempt.

Affirmed.

INSURANCE — MEDICAL BENEFIT PLANS — EMPLOYEE RETIREMENT INCOME SECURITY ACT — PREEMPTION — SELF-INSURERS.

An uninsured, employer-funded corporate medical benefit plan for a corporation engaged in an industry or activity affecting commerce is subject to the federal Employee Retirement Income Security Act, which preempts all state laws insofar as they relate to the plan (29 USC 1001 *et seq.*).

*Romain, Donofrio & Kuck, P.C.* (by *A. Saree Hantler* and *John C. Brennen*), for plaintiff.

*Honigman, Miller, Schwartz & Cohn* (by *Stephen Wasinger*), for defendants.

Before: M. J. KELLY, P.J., and SHEPHERD and C. W. SIMON,* JJ.

M. J. KELLY, P.J. State Farm Mutual Automobile Insurance Company filed this action for a declaratory judgment on the question of liability for medical expenses incurred by Gregory Schultz. The trial court granted summary disposition in favor of defendants by order of August 14, 1985. Plaintiff appeals that order as of right and we affirm.

Gregory Schultz sustained injuries as a result of an automobile accident that occurred on October 22, 1983. At that time, Schultz was insured by an automobile no-fault insurance policy issued to him by State Farm. He was also a participant in a medical benefit plan provided through his employment with defendant C. A. Muer Corporation. The

* Circuit judge, sitting on the Court of Appeals by assignment.

plan, entitled C. A. Muer Corporation Employees' Medical Benefits Plan (Class 7), is administered by C. A. Muer Corporation. The plan supervisor is Northern Group Services, Inc. The parties do not dispute that the Muer plan is uninsured and funded by defendant corporation.

Under the terms of the Muer Plan, Gregory Schultz is entitled to certain health and medical benefits, subject to a coordination of benefits clause which provides as follows:

> If an Enrolled Person is entitled to receive benefits under this Plan and is entitled simultaneously to receive benefits under any other Health Plan which provides similar benefits, payment of benefits as between Health Plans shall be resolved in the following manner.
>
> (1) If any other Health Plan does not contain a Coordination of Benefits provision, the benefits of such plan shall be determined prior to determination of the benefits of this Plan.
>
> (2) If any other Health Plan does contain a Coordination of Benefits provision, the benefits of such plan shall be coordinated with the benefits of this Plan. Priority shall be given, in the order listed, to the plan under which the individual is entitled to receive benefits:
>
> (a) other than as a dependent;
> (b) as a dependent of a male individual;
> (c) as a dependent of a female individual.
>
> If priority cannot be established by the above, priority shall be given to the plan under which the individual has been covered for the longer period of time.

"Health Plan" is specifically defined in the Muer Plan to include no-fault insurance policies required under state law.

Schultz's no-fault policy also includes a coordination of benefits clause, which provides:

> Benefits shown as coordinated will be reduced by any amount paid or payable to you or any relative under any:
> 1. vehicle or premises insurance;
> 2. individual, blanket or group accident or disability insurance; and
> 3. medical or surgical reimbursement plan.

State Farm paid some of the expenses resulting from Schultz's accident and, upon discovering the existence of Schultz's employee benefit plan, filed this action for declaratory judgment seeking a determination of its liability for expenses already paid as well as for unpaid expenses incurred and future expenses.

Defendants denied liability, relying on the Muer Plan's coordination of benefits clause, and moved for summary disposition on four grounds: (1) plaintiff's coverage of Schultz pre-dated defendants' coverage making plaintiff liable for all of Schultz's benefits as a matter of law; (2) plaintiff's claims were preempted by the Employee Retirement Income Security Act, 29 USC 1001 *et seq.;* (3) plaintiff had failed to comply with the Muer Plan's claim procedures and had thus failed to exhaust its administrative remedies prior to commencing suit; and (4) C. A. Muer Corporation was not a proper party defendant. Plaintiff responded with a countermotion for summary disposition and, following a hearing on both motions, the trial court entered an order in favor of the defendants. The court concluded that the terms of the Muer Plan controlled and, since the no-fault policy had been issued to Schultz at least ten months prior to Schultz's enrollment in Muer's benefit plan, plaintiff was liable for primary coverage of Schultz's medical expenses.

On appeal, State Farm relies upon § 3109 of

Michigan's no-fault act in asserting that the benefits provided by the Muer Plan and the no-fault policy must be coordinated in accordance with Michigan law. Section 3109a requires no-fault insurers to provide insureds with the option of purchasing a coordination of benefits clause in their policy for a lower premium rate:

> An insurer providing personal protection insurance benefits shall offer, at appropriately reduced premium rates, deductibles and exclusions reasonably related to other health and accident coverage on the insured. The deductibles and exclusions required to be offered by this section shall be subject to prior approval by the commissioner and shall apply only to benefits payable to the person named in the policy, the spouse of the insured and any relative of either domiciled in the same household. [MCL 500.3109a; MSA 24.13109(1).]

In *Federal Kemper Ins Co, Inc v Health Ins Administration, Inc,* 424 Mich 537; 383 NW2d 590 (1986), the Michigan Supreme Court interpreted § 3109a as imposing primary liability upon the health insurer where an insured is also covered by a no-fault policy containing a coordination of benefits clause. Application of *Federal Kemper* in this case would thus require the Muer Plan to pay Schultz's medical expenses up to the limits of its liability.

Defendants respond that Michigan law does not apply because it is preempted by ERISA. Although the trial court declined to address this argument when defendants asserted it below, we will consider it on appeal because we are persuaded that resolution of this purely legal issue is necessary to the proper disposition of this case. *DeWitt Twp v Clinton County,* 113 Mich App 709; 319 NW2d 2 (1982). Moreover, ERISA is a comprehensive federal

statute regulating all employee pension and welfare plans provided by employers engaged in an industry or activity affecting commerce. 29 USC 1003(a). Since the Muer Plan is an employee benefit plan and since C. A. Muer Corporation is engaged in an industry or activity affecting commerce, we are bound to consider ERISA and relevant federal case law in resolving the dispute before us.

The ERISA provision governing the instant controversy is § 514, 29 USC 1144. Section 514(a) expressly provides that ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" provided by an employer engaged in an industry or activity affecting commerce. The United States Supreme Court has broadly interpreted the term "relate to" so that a state law is preempted if it "has a connection with or reference to such a plan." *Shaw v Delta Air Lines, Inc,* 463 US 85, 97; 103 S Ct 2890; 77 L Ed 2d 490 (1983). Thus, our application of § 3109a in this case is preempted unless otherwise saved by § 514 of ERISA.

Plaintiff argues that § 3109a is not preempted under the saving clause of § 514(b)(2)(A), which provides:

> Except as provided in subparagraph (B), nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities. [29 USC 1144(b)(2)(A).]

Plaintiff reasons that since § 3109a is a Michigan law regulating insurance, it is expressly saved from federal preemption and thus applies in the instant case.

The saving clause of § 514(b)(2)(A) is, however,

limited in its scope by what is commonly referred to as the "deemer clause" in § 514(b)(2)(B), which provides:

> Neither an employee benefit plan described in section 1003(a) of this title, which is not exempt under section 1003(b) of this title (other than a plan established primarily for the purpose of providing death benefits), nor any trust established under such a plan, shall be deemed to be an insurance company or other insurer, bank trust company, or investment company or to be engaged in the business of insurance or banking for purposes of any law of any State purporting to regulate insurance companies, insurance contracts, banks, trust companies, or investment companies. [29 USC 1144(b)(2)(B).]

This deemer clause has recently been scrutinized by the federal courts. We are persuaded on the basis of the resulting case law that the ERISA saving clause does not save § 3109a from preemption for purposes of this case because the Muer Plan is not insured by a commercial insurance company and is thus not subject to the insurance laws of Michigan.

In *Metropolitan Life Ins Co v Massachusetts,* 471 US —; 105 S Ct 2380; 85 L Ed 2d 728 (1985), the United States Supreme Court considered for the first time the interplay between the insurance saving and deemer clauses of § 514(b), in deciding whether a Massachusetts insurance statute applied to an ERISA plan issued to Massachusetts residents and commercially insured through Metropolitan Life. The Massachusetts law required health insurers to provide certain minimum coverage for mental health expenses. The ERISA plan insured through Metropolitan Life did not meet this state law requirement.

The Supreme Court ruled that, because the ERISA plan was commercially insured, the insurance

company insuring the plan was subject to Massachusetts insurance laws, which were saved under § 514(b)(2)(A). The insurer was thus required to provide the requisite coverage. In reaching this conclusion, the Supreme Court distinguished between commercially insured and uninsured employee benefit plans and recognized that its decision would result in different treatment of these plans under state law. By way of dicta, the Supreme Court indicated that an uninsured employee benefit plan will not be subject to state insurance regulation because the plan is not an insurance company and may not be "deemed" an insurance company under § 514(b)(2)(B).[1]

The federal district court of Michigan has been presented with at least two opportunities to consider the same issue now before this Court. In *Auto Club Ins Ass'n v Pipeline Industry Benefit Fund,* Docket No. 85-70415 (ED Mich, decided December 13, 1985) (unreported), the no-fault insurance carrier had issued a policy with a coordination of benefits clause to an insured who was also a participant in an employee benefit fund. The no-fault insurer relied upon § 3109a and Michigan case law in asserting that its liability was secondary to the health coverage provided the insured under the employee benefit plan. Judge Julian Abele Cook, Jr., disagreed and held that § 3109a was preempted by ERISA because the "other health coverage" was provided by an uninsured ERISA plan and was thus not subject to Michigan insurance regulation. The same conclusion was drawn by Judge Anna Diggs Taylor in *Northern Group Services, Inc v State Farm Mutual Automobile Ins Co,* Docket No. 85-75383 (ED

---

[1] See also *Children's Hospital v Whitcomb,* 778 F2d 239 (CA 5, 1985), and *Blue Cross & Blue Shield of Florida, Inc v Matthews,* 473 So 2d 831 (Fla app, 1985).

Mich, decided June 2, 1986), (unreported), which also involved an uninsured employee benefit plan.[2]

On the basis of the foregoing analysis, we conclude that § 3109a does not govern the parties' liability for coverage in this case. Whether defendants are liable for Gregory Schultz's medical expenses is a matter of federal law. Since the coordination of benefits clause contained in the Muer Plan expressly provides that primary coverage shall be provided under the plan in effect for the longer period of time, the trial court did not err in the result reached in this case. Given our disposition of the preemption issue, we need not consider plaintiff's remaining arguments on appeal.

Affirmed.

---

[2] Although plaintiff and defendant Northern Group Services, Inc., in this case were also involved in the federal court action, the dispute in that case involved a different employee benefit plan.